IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


SHAN TWINS, INC., et al.,

                Plaintiffs,

      v.

WELLS FARGO BANK, N.A.,

                Defendant.

Civ. No. 6:24-cv-00834-AA

**OPINION AND ORDER**

AIKEN, District Judge

       Plaintiffs filed this action for specific performance, breach of contract, and conversion against Defendant Wells Fargo Bank in Marion County. Case No. 24CV24573, Ex. 1, ECF No. 1-1. Defendant removed to federal court under 28 U.S.C. § 1441(a). Before the Court is Plaintiff's Motion for Preliminary Injunction, ECF No. 3, and Defendant's Motion to Dismiss, ECF No. 10. For the reasons explained, Plaintiff's Motion for Preliminary Injunction, ECF No. 3, is DENIED. Plaintiffs failed to respond to Defendant's Motion to Dismiss and therefore are ORDERED to show cause why this case should not be dismissed with prejudice.

## FACTUAL BACKGROUND

       On December 29, 2021, Plaintiffs purchased a 2022 Tesla Model X ("the Tesla"). Compl. ¶ 5, ECF No. 1-1. Plaintiffs financed the car with a loan from Defendant for $107,090.00. *Id.* Plaintiffs agreed to set up automatic payments from her bank to

Defendant. *Id.* ¶ 7. Plaintiffs maintain that Defendant "agreed to automatically draft the monthly payments from [Plaintiffs'] bank account" and "notify [Plaintiffs] about any issues with [the] automatic payments." *Id.* On April 12, 2022, an automatic payment from Plaintiffs' bank account was withdrawn and paid to Defendant for $1,700.00.

Shortly after, the automatic payment mechanism was cancelled. *Id.* ¶ 9. Plaintiffs made no payments for two years and on April 29, 2024, Defendant notified Plaintiffs that it would repossess the Tesla and Defendant did, in fact, repossess it. *Id.* ¶¶ 10-11. Immediately, Plaintiffs contacted Defendant stating that they were never notified about any missed payments. *Id.* ¶ 12. Defendant investigated the payment issue and found that the April 2022 auto-payment was returned by Plaintiffs' bank. *Id.* ¶ 13. Plaintiff did not agree with that finding. *Id.* Defendant is in the process of selling the Tesla.

Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction in Marion County Circuit Court to stop sale of the Tesla. ECF No. 1-3 ("Mot."). On removal, Plaintiffs ask the Court to refer to the motion filed in state court, asserting that the standard for an injunction under Oregon law is "essentially the same" as the standards under Federal Rule of Civil Procedure 65. The Court agrees that the standards are essentially the same.

## LEGAL STANDARD

"The appropriate legal standard to analyze a preliminary injunction motion requires a district court to determine whether a movant has established that (1) [it] is likely to succeed on the merits of [its] claim, (2) [it] is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in [its] favor, and (4)

a preliminary injunction is in the public interest." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 2(2008).  Further, the Federal Rules of Evidence do not strictly apply in the preliminary injunction context.

A preliminary injunction can take two forms: prohibitory or mandatory. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878–79 (9th Cir. 2009).  A prohibitory injunction—the most common type—prohibits a party from taking action and merely freezes the positions of the parties until the court can hear the case on the merits.  *Id.*  In contrast, a mandatory injunction is one that goes beyond maintaining the status quo and "orders a responsible party to take action."  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015); *Dodge Bros. v. Gen. Petroleum Corp. of Nev.*, 10 P.2d 341, 342 (Nev. 1932) (recognizing that a "mandatory injunction" is one that requires an individual to do a particular act, such as compelling performance of a contract)

Finally, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

## DISCUSSION

### I.    Likelihood of Success on the Mertis

Plaintiffs assert that they are likely to succeed on the merits of their claims against Defendant for: (1) Breach of Contract; (2) Conversion under Oregon Law; and (3) Specific Performance.  Plaintiffs refer to the Court to their Complaint, Declarations, and Motion for TRO filed in state court.  Plaintiffs do not supply a developed argument in either court explaining how each claim is likely to succeed.

### A.    *Breach of Contract*

To prove a breach of contract claim, Plaintiffs must demonstrate: (1) "the existence of a contract," including "its relevant terms;" (2) Plaintiffs' "full performance and lack of breach;" and (3) Defendant's breach resulting in damage. *Moyer v. Columbia State Bank*, 505 P.3d 26, 33 (Or. 2021); *see Slover v. Oregon State Bd. of Clinical Social Workers*, 927 P.2d 1098, 1101 (Or. App. 1996) (reciting elements).

Plaintiffs' complaint asserts that Defendant "breached the parties' agreement by (1) unlawfully by unilaterally cancelling [Plaintiffs'] automatic monthly payments for no legitimate reason and failing to notify [Plaintiffs'] about that action or about any past due balance; (2) repossessing the Tesla more than two years later without notice and refusing to accept [Plaintiffs'] payment of the past due balance to reinstate the loan agreement.  Compl. ¶ 26.

Defendants respond to Plaintiff's motion, arguing that, while "there is no dispute over the existence of a contract, Plaintiffs have failed to allege or identify the relevant terms, their own performance, and lack of breach, Wells Fargo's breach, or damages."  Resp. at 13, ECF No. 8.

### 1.    **Automatic Payments**

Defendants provide as exhibits the Wells Fargo's Automatic Payment Authorization Agreement.  ECF No. 8-2.  According to the record, when enrolling customers in autopay, borrowers must affirm that "if Wells Fargo Auto cancels automatic payments, [customers remain] responsible for making regular monthly payments[.]" Ex. 2.

Under the Automatic Payment Agreement, Wells Fargo was entitled to cancel Plaintiffs' automatic payments for numerous reasons including (but not limited to) if

Wells Fargo was unable to complete payment withdrawals from Plaintiffs' designated bank account.

Further, the record is that, on March 12, 2022, Plaintiffs' Loan Payment was debited from the bank account listed on the Automatic Payment Agreement in the amount of $1,700.00. ECF No. 8-3, Ex. 3. But on March 16, 2022, Plaintiffs' March payment was reversed as unauthorized by the corporate borrower. Ex. 3; Ex. 4 at 9.

Evidence is that Defendant called Plaintiffs and left a message notifying them that the automatic payment did not go through, and to see if they wanted to make the payment manually. Ex. 4 at 9. Plaintiffs did not thereafter make the March payment. Ex. 3. On April 12, 2022, Defendant attempted a second automatic payment. Ex. 3. The April automatic payment was also reversed as unauthorized by Plaintiffs, and authorization to attempt any further automatic payments was revoked by Plaintiffs on April 14, 2022. Ex. 3; Ex. 4 at 9.

The terms of the Automatic Payment Agreement do not contain a requirement that Defendant inform Plaintiffs if automatic payments are canceled. However, contrary to Plaintiffs' allegations, evidence in the record is that Defendant sent Plaintiffs written notice on two occasions.

First, Defendant sent written notice to Plaintiffs to inform them that automatic payments had been "canceled at your request," which letter was sent to Plaintiffs at 1057 Nona Ave NW, Salem, OR 97304-2968 – an address listed in the Contract. ECF No. 8-5, Ex. 5 (Apr. 14, 2022 Letter). This is also the address for Shan Twins' registered agent as listed with the Oregon Secretary of State. *See* Kaur Decl., ¶ 9, ECF No. 1-3; Ex. 6, ECF No. 8-6 (Secretary of State Registration). The record is that Defendant provided five options for making payments in light of the cancelation of

automatic payments: online, by phone, by mail, at a Wells Fargo branch, or through Western Union or MoneyGram.  *Id.*

Second, Defendant sent Plaintiffs written notice of their obligation to strictly comply with the Contract, which notice was sent to both addresses listed in the Contract. Ex. 7 (April 29, 2022 Notice).  Defendant notified Plaintiffs that they must pay $3,369.28 by May 9, 2022, to bring their account current and to "avoid possible repossession of your Vehicle."  *Id.*  Wells Fargo also notified Plaintiffs that they must thereafter make their next loan payment in the amount of $1,604.42 by May 12, 2022, to remain current.  *Id.*

At this stage of litigation, Plaintiffs have not met their burden to show that Defendant breached any term of the automatic payment conditions to justify the extraordinary remedy of an injunction.

## 2.    Repossession and Redemption

Plaintiffs claim that Defendant breached their agreement by "repossessing the Tesla more than two years later without notice."  Compl. ¶ 26.

Defendants produce the Sales Contract for the Tesla. Ex. 1, ECF No. 8-1.  On it, the Plaintiffs are coborrowers.  The Contract required Plaintiffs to make a down payment of $4,599.96 to fund the purchase, with financing in the principal amount of $107,090.00 with interest accruing at the rate of 2.49% per annum. Ex. 1 at 1-2. The Contract, which is for a business loan, required Plaintiffs to make 72 monthly payments in the amount of $1,604.42, beginning on February 12, 2022 (the "Loan Payments").  Ex. 1 at 1.  Plaintiffs provided the following addresses in the Contract:

Shantwins, Inc.
2620 Lancaster Dr. NE
Salem, OR 97305

Harpreet Kaur
1057 Nona Ave.
Salem, OR 97304

Ex. 1 at 1. The Contract further provides that Tesla "intends to sell this contract to Wells Fargo Auto which, if it buys the contract, will become the owner of the contract and your creditor." Ex. 1 at 5. Tesla assigns its interest in the Contract to Wells Fargo. Ex. 1 at 5. In the event of Plaintiffs' failure to make the Loan Payments as agreed, the Contract allows Wells Fargo to repossess the vehicle, and, after repossession, allows only one option for avoiding the sale of the vehicle following repossession: redemption. Specifically, the Contract states, "If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle". Ex. 1, Contract at 4-5.

Plaintiffs assert that after the Tesla was repossessed, they contacted Defendant and offered to pay the past-due amount, *i.e.*, the payments from May 2022 to May 2024—twenty-four months of payments. *See* Kaur Decl., ECF No. 1-3 at 9, ¶ 10. The evidence in the record, however, is that Plaintiffs have not agreed to *redeem* the vehicle, i.e., paying the full amount owed, which is over $100,000.00. See Compl. ¶ 21 (Plaintiff agreeing to pay monthly payments dating to May 2022).

Plaintiffs have not met their burden to show they are entitled to the extraordinary remedy of an injunction.

On review of Plaintiffs' briefing, the complaint, and supporting declarations, the Court finds that Plaintiffs have failed to identify terms of a contract that were breached. Plaintiffs cannot allege a breach of contract without identifying a contractual provision which would support such a claim. *See id.; see also Miron v. Herbalife Int'l, Inc.*, 11 Fed. App'x 927, 929 (9th Cir. 2001) ("[I]n order for [a breach of

contract] action to be based on an instrument in writing, the writing must express the obligation sued upon.") (citation omitted) (alternations in original); *Morgan v. Ocwen Loan Servicing, LLC*, 2018 WL 1796292, at *4 (D. Nev. Apr. 16, 2018) (denying a breach of contract claim for failure to point to any specific contractual language under which defendants' conduct would constitute a breach).

### B.    *Conversion*

Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Rice v. Rabb*, 320 P.3d 554, 556 n.4 (Or. 2014); *Becker v. Pac. Forest Indus.*, Inc., 211 P.3d 284, 287 (Or. App. 2009). "One must be entitled to immediate possession of a chattel before he can successfully contend that the actor's failure to yield possession constitutes conversion." *Artman v. Ray*, 501 P.2d 63, 64 (Or. 1972) citing Restatement (Second), Torts § 225 (1965). In the case of a vehicle subject to a lien, "there is no right to immediate possession until the amount of the lien is tendered," rendering a claim for conversion incognizable unless and until the lien is paid. *Id.* (emphasis added).

Here, Plaintiffs' claim for conversion is premised solely on the assertion that Defendant "wrongfully took possession" of the Tesla by repossessing it. Compl. ¶ 30. Plaintiffs' claim fails for two undisputable reasons. First, Defendant's repossession of the Tesla is not "wrongful," rather it is based on explicit contractual terms providing for Defendant's right to possess the Tesla on Plaintiffs' default. The Contract provides: "If you default, we may take (repossess) the vehicle from you." Ex. 1 at 4. There is no cognizable claim for wrongful possession of the Tesla here, given Plaintiffs' long-standing default. Second, Plaintiffs are not entitled to possession of the Tesla due to

their failure to tender the amounts due and owing under the Contract, as explained above. Without establishing entitlement to possession of the Tesla in the first instance, Plaintiffs have not demonstrated a likelihood of success on their claim for conversion.

###    C.    Specific Performance

The crux of Plaintiffs' claim for specific performance is that an injunction is required because if the Tesla is sold, they will not be able to be awarded specific performance if they prevail on their contract claim. Compl. ¶ 23. Plaintiffs assert that the Court should order Defendant to reinstate Plaintiffs' loan, but, as explained above, Defendant has performed according to the terms of the agreement between the parties. Plaintiffs seek reinstatement of the loan, but such not a remedy contemplated in the Contract and thus is not a remedy specifically enforceable here. *See Booras v. Uyeda*, 666 P.2d 791, 800 (Or. 1983) (holding that specific performance concerning a payment term requires that the contract provide for those terms).

## II.    Irreparable Harm, Balance of Equities, and Public Interest.

As explained, Plaintiffs have failed to satisfy their burden of demonstrating a likelihood of success on the merits. The Court has evaluated whether Plaintiffs likely to suffer irreparable harm absent the preliminary injunction, the balance of equities, and whether an injunction is in the public interest. *See Winter, Inc.*, 555 U.S. 7, 2 (2008).

Irreparable harm "cannot be adequately remedied through [monetary] damages." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Here, Plaintiffs seek monetary damages in the alternative to reinstatement of their loan. Compl. ¶¶ 28, 31; *Id*. at 8 (Prayer for Relief). As far as equity goes, Plaintiffs took out

a business loan and drove the Tesla for two years without paying for it. The balance of equities does not favor Plaintiffs here. Finally, this dispute does not implicate a public interest that favors a finding for Plaintiffs.

Plaintiffs motion for preliminary injunction is DENIED.

## III.    Motion to Dismiss

Defendant has filed a motion to dismiss. ECF No. 10. Plaintiffs have not responded timely. Plaintiffs have not communicated with the Court. However, in caution that Plaintiffs may have been awaiting a ruling on the motion for preliminary injunction before responding to the Motion to Dismiss, the Court ORDERS Plaintiffs to respond in fourteen (14) days. Failure to respond will result in dismissal of the action with prejudice.

## CONCLUSION

Plaintiffs' Motion for Preliminary Injunction is DENIED. Plaintiffs are ORDERED to submit his written response to Defendant's Motion to Dismiss within fourteen (14) days of the date of this Order. Failure to comply will result in dismissal of this action without further notice.

It is so ORDERED and DATED this _____10th_____ day of September, 2024.

           /s/Ann Aiken_____
           ANN AIKEN
           United States District Judge